number 20 4266 Mr Martin is that you you're calling in it is I'm here very good that you may proceed, sir. Okay, I'm sorry. Oh, my name is Martin. I'm the process here. Morning honors. Good morning. First of all, so you know that this is my second time in front of second circuit. In reference to this building lot, and a review of that decision, and what went on there, I think would indicate to the court, who's acting in good faith, and who isn't. I'm a process. I have no legal training as a lawyer. And I tried my best to present my case as professionally as possible. Relative to other process. Got help when I could. Anybody I could. One of the main factors I want to talk about is that this case, the dismissal was due to me not filing my opposition correctly. I missed the vocal rule and didn't follow it when I opposed their motion for summary judgment and I apologize for that. In reference to being a process I mean I've done everything a process could possibly do for a builder. I'm a veteran of two services, both of which I enlisted in after college but I'm not a rocket scientist. And I think I've done a pretty good job and I think that the judges decision if it was based on me, not find local rule and following my opposition. I'm going to interrupt you for a minute, you know, I think that what the judge said was that it was very unfortunate that you had not filed the statement that's required to show what facts you agreed with and what facts you took issue with. But she did the best she could in her lengthy opinion, describing what had happened and what the law required as to your property and I was on actually, I was on the first panel in which you succeeded to send it back to the town and to the district court for further decision making basically. But where we are now I think is that in order to prevail on at least one of your claims of categorical taking, you have to show that the properties become completely valueless because of the wetlands, because of the frontage requirements and so on. But the record shows that the properties, while certainly not what you had hoped when you split up the property from the original configuration that the side lot is still valued at more than $26,000 in 2019 so it's not completely valueless. Do you agree that that's that value is coming from the defendants, and that for them to say that but in any regulatory taking. There's no difference between my property the way it says now and Mr Lucas's property and Lucas versus South Carolina, everything that she claims I can do with the property right now, he could have done and more he had oceanfront property. There'd never be a regulatory taking, if you, there's no property on the face of this earth. You couldn't find some value and to do. Do you think that in fact your property is valueless. Or there are no, there are no beneficial uses of your property. There's no beneficial uses and it's prescribed use. Can I farm this property. Yes. Could I, could I sit on the property and picnic on it. Yes. I think and this is something that might need, you know, to be clarified by the, by the Supreme Court is, is it taking taking is relative to its prescribed use the properties prescribed use is that the single family residential land, and you cannot get any form. The reason why the town isn't letting you build on the property is because of the wetlands testing and the frontage requirement right. That's not that's not right. It's the frontage but it's not the wetland thing I never went to wetlands and let me clarify this because the last time I was in front of you got confusing the wetlands issue is simply goes to my claim of equal protection. Nothing else. I'm sure that I can get through the wetlands board, but it's like saying that's, that's helpful so then it's the frontage, and is it the frontage. Because you haven't built the road or because there's no way to build a road that would allow for the way to build the road but I don't for one single family home, I have 50 feet of frontage plenty of room to access the property. And it's the exact same frontage that the adjoining lot that it was taken from has exactly the same. So, and there's, and there's hundreds, if not 1000 lot in the town that don't have the required frontage for the zoning district. But, and, and a simple variance which I applied for was fought tooth and nail. My point is, you know, and I have to say this is the town. I had an elderly engineer who helped me with this. passed away. And when I first started to develop it he said Tim. He goes, either. They never want this property developed, or they hate you, or both. And, and it was a slap in the face man like what are you talking about because I'm not because I've been doing this for 50 years, I've never seen the town act this way towards anything. First they opposed me, as far as the health department, which I overcame in the state health court. If you look at my original point. And then they were like, well, really going to show him now he showed us we're going to show him, and it goes more to elect versus Walbrook that it does anything else which was the same case she had. She sued them in state court and then they said she needs to give them a wider variance than normal to bring water to her house. But that said, the, the issue. If they had issued a variance this would have been a dead issue the day of they came at me. Full force of the town not this attorney but the town attorney, and all the zoning upset do not give him that very do not give him that very he's got 50 feet and that's his fault, blah, blah, blah, blah. So, is this what is my point, as I was saying before, this land. There's no land in America that doesn't have some use somehow somewhere for something, but it's prescribed use to this property as a single family home, and they won't let me build one. All right, but thank you very much, Mr Martin, we have your papers also and we'll review them carefully. Thank you for your argument we'll hear from the town please Mr Zellner morning may please the court party Jonathan Zellner for the police in this matter. So, we respectfully submit that judge Julie in her very thorough and detailed decision was correct in, in her entirety of the analysis of Mr Martin's regulatory takings claim and his equal protection claim. First, with respect to the takings claim, as this court is noted. There are the first category of regulatory takings which is categorical takings occur the value so you have property the property value at $118,000 in 2015 and then 26,020 19 is the difference in value is that because he's not allowed to build the home. I, I'm not entirely sure the exact reason Your Honor, I believe, in part it's because the property has essentially laid fallow over the last handful of years. But, you know, in effect, from it not being developed. You know, certainly would contribute to that. But he can't, he can't develop I mean he's trying to develop it right and doesn't, and the town is not letting him so so you. So it does seem like it's plausible that the decline in value is because of the town. Well, Your Honor, that really goes to and with respect to the frontage issue. It was made clear to Mr Martin that based on the zoning district in which this property was situated in our 40 district he needed to have 200 feet of frontage on an approved road. And that issue was adjudicated through the zoning Board of Appeals, it went up on appeal to the Superior Court of Connecticut, the court observed succinctly there that Mr Martin's division plan which only had the initials of the former zoning enforcement officer, you know, showed that he did not have the requisite frontage. That would enable him to obtain. He hasn't built the extension of the road or is it because it's impossible to build such a thing so he's never going to have the frontage. It's really good, you know, he never built the road. But if he, if he were to build the road would he have the requisite frontage, it would appear that if he built the road, he would have in accordance with the division plan that he would have the 200 feet of frontage on on a public street. Can you, can you clarify a couple things for the record. One was this 200 frontage 200 feet frontage requirement in place before he purchased. Yes, it was in this. And then, can you speak to the issue of what he raised that there are variances that are freely given for those 200 for those 200 feet, and he makes the allegation that other people get it and he's being uniquely deprived it. I, Your Honor, honestly cannot speak to that I do not know what if any properties Mr Martin is referring to in that regard, and to the extent he's trying to make an equal protection claim, based on allegations that other properties do not have 200 feet of frontage in an R40 zoning district on on a public road, and have been allowed to develop it, it's incumbent on him to identify those properties and to establish. He does he identifies his the neighboring property right but like it's actually if you just look at the map of his property I mean there are these cul de sacs that you see neighboring the property and so I guess when you have the road terminated like a circular endpoint. There are a lot of houses on those kinds of roads that don't have all the frontage right. Um, there may be in your honor. That's where he's created that he's created a property at the end of one of these cul de sacs right. He divided a property located at nine dogwood lane which originally encompassed what Mr Martin refers to his nine mark road that portion of the property which is on the eastern most side of where the original nine dogwood lane was located. I think that's what is it where there's that circular road right. Correct. It's at the far western end of Lark Road where the road terminates, you know, it appears that at most it has 50 feet or so of frontage on that road. But, you know, certainly the 200 feet of frontage issue was brought to Mr Martin's attention. You know as early as 2011 he was aware of this it was in place. Prior to his attempts to divide this property, and then to build on it. So again, he was, he was certainly aware of that and these zoning regulations are part of part of a program to adjust. You know, or to promote the public good in the town of Simsbury to have sort of, you know, uniform rules and regulations for developing property, not just in our 40 zoning districts but you know in all zoning districts. You know, certainly the character of the governmental action in that regard is legitimate and promotes legitimate government ends. And so, about the beneficial uses right so like the question is whether the thing has a beneficial use I mean you're saying that the beneficial use it has is he could sell it to his neighbors. And so it's not completely valueless but he certainly can't do with the property, what one does with such a property which is build a house on it. Right. Well, at the moment, it's really without the 200 feet of road frontage. You know he's not in compliance with the zoning regulations so that is one issue that would not enable him to build a single family residence. The other issue is also the issue of wetlands, or possible presence of wetlands on the property Mr Martin has insisted that he's not subject to the inland wetlands regulations because the town's map doesn't depict inland wetlands on the property, but the inland get through the well I mean it doesn't sound like he's even contesting the wetlands question right so. So we're talking about the frontage. And then, and just to put a fine point on it, you're the position is that he could have a road, he would just need to pay to build it, and then he could develop it. Right. Well, your honor I mean there is there is a process for I believe in dating and dedicating, you know, that portion of the property because he wouldn't, in effect, have to give up a portion of, of the nine mark road lots, you know, to the town or to the town so that he could build the road, because it does show an extension going into his property. So there would be a process there where the reason what's the reason for the frontage requirement, like you just you just said a whole thing about how it serves the public interest so what so how does the frontage requirements serve the public interest. Well, really your honor, it's, you know, to establish kind of, you know, a consistent, you know, sort of baseline for, you know, just character development of the town. It's to, you know, really ensure that you know all properties would have, you know, access there, you know sufficient access to a public road. And again, just to kind of promote a consistent character and, and just the nature of development doesn't seem like the wetlands for a minute I understood that, that there was a wetlands concern about laying a foundation and building a house in this property but turned out to be farther from wetlands and I gathered there wasn't a definitive soil testing that was conducted but there was basis for reason and like the state map versus the town map for can think believing that it might not be possible consistent with current regulations concerning wetlands, because of the soil on which he proposed to build. Is that am I wrong about understanding that from the record, or is that, I mean, he's not pursuing that argument or he didn't pursue that argument this morning but I understood that that to have been a concern that also prevented the construction that was proposed is that right. That was a concern your honor correct the combination of what's depicted on the state GIS mapping as well as in a prior testing the property showing that it exhibited high groundwater and Mr. Morton made clear to the town that he was not going to perform any testing for the presence of inland wetlands. So it may or may not be resolved in his favor ultimately but it's not so clear that just if he builds a road he can build a house. Exactly. It's not simply the road there is the wetlands issue as well. All right. All right. Thank you very much. Thank you for your arguments will reserve decision. This concludes our calendar for argument this morning the clerk will please adjourn court. Thank you. Thank you. Court is adjourned. Court is adjourned. Thank you. Thank you. Thank you. Thank you. Thank you. Thank you.